# United States District Court
## Violation Notice

CVB Location Code: A180

| Violation Number | Officer Name (Print) | Officer No. |
|---|---|---|
| 6708874 | POPORIS | 615 |

6708874

### YOU ARE CHARGED WITH THE FOLLOWING VIOLATION

| Date and Time of Offense (mm/dd/yyyy) | Offense Charged ☒ CFR ☐ USC ☐ State Code |
|---|---|
| 07/01/2017 1844 | 36 CFR 4.22 b3 |

Place of Offense: Katherine Spur Rd by Motel

Offense Description: Factual Basis for Charge — driving w/out due care

HAZMAT ☐

### DEFENDANT INFORMATION

| Last Name | First Name | M.I. |
|---|---|---|
| GARZA | Rene | J |

Street Address:

| City | State | Zip Code | Date of Birth (mm/dd/yyyy) |
|---|---|---|---|
| Bakersfield | CA | 93309 | 1988 |

Drivers License No.: (blank) CDL ☐ D.L. State: CA Social Security No.:

☒ Adult ☐ Juvenile  Sex ☒ Male ☐ Female

| Hair | Eyes | Height | Weight |
|---|---|---|---|
| Brn | Grn | 6-01 | 255 |

### VEHICLE  VIN:  CMV ☐

| Tag No. | State | Year | Make/Model | PASS ☐ | Color |
|---|---|---|---|---|---|
| | CA | 11 | GMC Sierra | | Silver |

☒ A — IF BOX A IS CHECKED, YOU MUST APPEAR IN COURT. SEE INSTRUCTIONS (on back of yellow copy).

☐ B — IF BOX B IS CHECKED, YOU MUST PAY AMOUNT INDICATED BELOW OR APPEAR IN COURT. SEE INSTRUCTIONS (on back of yellow copy).

$ ~~Forfeiture Amount~~
+ $30 Processing Fee
PAY THIS AMOUNT → $ ~~Total Collateral Due~~

### YOUR COURT DATE
(If no court appearance date is shown, you will be notified of your appearance date by mail.)

Court Address: 702 293 8857 Chris Raynolds

Date (mm/dd/yyyy):
Time (hh:mm):

My signature signifies that I have received a copy of this violation notice. It is not an admission of guilt. I promise to appear for the hearing at the time and place instructed or pay the total collateral due.

X Defendant Signature: [signature]

---

17-04292-po-001-PCT-DMF

CVB Scan AUG 09, 2017 10:57

---

## STATEMENT OF PROBABLE CAUSE
(For issuance of an arrest warrant or summons)

I state that on July 01, 2017 while exercising my duties as a law enforcement officer in the _____ District of Arizona

see attached (4 pages)

The foregoing statement is based upon:
☒ my personal observation  ☒ my personal investigation
☐ information supplied to me from my fellow officer's observation
☒ other (explain above)

I declare under penalty of perjury that the information which I have set forth above and on the face of this violation notice is true and correct to the best of my knowledge.

Executed on: 07/01/2017   Officer's Signature: [signature]
             Date (mm/dd/yyyy)

Probable cause has been stated for the issuance of a warrant.

Executed on: _____   U.S. Magistrate Judge
             Date (mm/dd/yyyy)

HAZMAT = Hazardous material involved in incident; PASS = 9 or more passenger vehicle; CDL = Commercial drivers license; CMV = Commercial vehicle involved in incident

CVB SCAN 08/09/2017

## STATEMENT OF PROBABLE CAUSE

On or about July 1, 2017, at about 6:40 pm, I, Ranger Matthew Popores, was on patrol at Katherine Landing within Lake Mead National Recreation Area in the District of Arizona. The following is a summary of my investigation involving Rene GARZA:

I was patrolling with Ranger S. Barbay in a marked patrol vehicle. We were traveling up Katherine Spur Road from the launch ramp to the motel when I received a radio call about a vehicle obstructing traffic at the launch ramp. I went to turn my patrol vehicle around in the motel entrance when I observed a silver GMC Sierra truck towing a boat trailer in the launch/recovery lane near the restaurant parking lot entrance. There was a male standing in the road apparently talking to the driver of the silver truck. I turned around and observed male in the road holding up his cell phone as if to take a picture of the truck driver. When we pulled up to him he kept walking by us and said that the guy in the truck cut him in line.

We drove down to the launch ramp and were unable to find the traffic obstruction so we cleared the call and started back up Katherine Spur Road. When we drove by the same silver truck I heard someone yell "HEY". I observed that the front license plate and bumper of the silver truck looked dented. I turned our vehicle around in the restaurant parking lot and parked by the stop sign. I got out and started walking toward the truck.

I observed a tall white male with very short hair walking from the front of the silver truck to the passenger side. I observed a white male with long black and grey hair getting into the vehicle in front of the silver truck. That vehicle was a black Chevrolet Suburban towing a black two-PWC trailer. The trailer was empty.

The Suburban started to pull away so I knocked on the passenger window. The operator exited. I asked him what happened. He said that the truck behind him rear-ended his trailer. He did not see who was driving but said that the guy was talking to him about the accident. I turned around and observed that there was a female in the driver's seat of the truck. The male I had seen walking from the front of the truck had walked into the restaurant parking lot. He was by the maintenance shop building/gas pump area. I called over to him to come back. At first he only looked at me, but after I pointed to him and yelled to him again he walked back over.

He came over to my patrol vehicle. I observed that his eyes were very red and glassy. His face was flushed. There was a strong odor of alcoholic beverage coming from him. He seemed nervous and avoided looking at me. I asked him if he was driving the truck. He said that he was not driving any vehicle. I told him that I believed he was driving the silver truck. He said that he was not. I asked him several more times and he eventually admitted to driving the truck, but said he was only going to back up the trailer. He also said that there was no accident. His speech was slurred and he did not seem to want to answer any of my questions. While I was talking to him he continuously looked around

1

instead of looking at me and turning his body from side-to-side anxiously. I had him sit on the sidewalk curb.

After a few seconds, GARZA said that the curb was too hot and stood up. I instructed him to sit on the rear bumper of my patrol vehicle. I identified him by verbal name and DOB as Rene GARZA. During this time he stood up multiple times. I told him to sit back down each time. I asked GARZA how much he had to drink. He said a couple beers. I asked him what kind and he said Corona Light. I asked him how long ago and he said an hour ago. I asked him when he had last eaten. He said at noon. He said he was not on any medications, under the care of a doctor or dentist, he had no physical disabilities or defects, but he did have a cut on the bottom of him left foot. GARZA said he was just going to back the trailer in. He also said that he did not know that there was only one lane for recovering boats and he did not mean to cut in line.

I walked over to the Shell gas pump with GARZA. Ranger Barbay moved the patrol vehicle. Shortly thereafter, Ranger Orfe and Ranger Bolton arrived.

I performed Standardized Field Sobriety Tests on GARZA. Prior to the Horizontal Gaze Nystagmus test I observed equal pupil size, equal tracking and no resting nystagmus. During the test I observed a lack of smooth pursuit in both eyes, a distinct and sustained nystagmus at maximum deviation in both eyes, and the onset of nystagmus prior to 45 degrees in both eyes for a total of six clues of impairment.

After performing the HGN, I asked Ranger Orfe and Ranger Barbay to contact the occupants of the two vehicles involved in the collision. During that conversation, Ranger Barbay told me that she had seen GARZA behind the wheel of the silver truck.

During the instruction phase for the Walk and Turn test, GARZA started before being instructed to do so. During his first attempt on the test he walked forward three steps, stopped for several seconds and then walked backwards three steps. I instructed the test for GARZA again. Instead of demonstrating three steps (as is common practice) I demonstrated all nine steps to ensure GARZA understood the instructions. During his second attempt, GARZA failed to touch his heel to his toe multiple times and performed an improper turn. I observed two clues on each attempt for a total of four clues of impairment.

During the One Leg Stand test I observed GARZA sway side-to-side and raise his arms for a total of two clues of impairment.

I then asked GARZA to perform a portable breath test. He put the straw into his mouth, closed his eyes and puckered his face as if he were blowing into the tube. I told him it was not working; he did the same thing on subsequent attempts. His face turned red while he was "blowing". The PBT did not register that GARZA was blowing into the machine.

2

Based on Ranger Barbay's and GARZA's statements of him operating the silver truck, my observations of the damage from the collision, GARZA's attempt to leave the area, his red and glassy eyes, his slurred speech, his statements about having consumed alcohol and his performance on the field sobriety tests, I placed GARZA under arrest. Ranger Bolton and I placed him into handcuffs.

Ranger Bolton and I transported GARZA to the launch ramp. I stopped to talk to Ranger Orfe and Ranger Barbay. They told me that the female who had taken over driving the silver truck after the collision admitted that GARZA had been driving. The Rangers said there was no noticeable damage to the trailer, but the front license plate on the silver truck was bent.

At the Katherine Booking Office I observed a deprivation period on GARZA from 1913 to 1929 hrs. During that time I explained the penalty for not doing the required breath test. I started the test at 1929 hrs utilizing an Intoxilyzer 8000 (SN:80-000724). GARZA provided one sample but then decided he did not want to provide a second sample. The test sequence was not completed successfully. Ranger Bolton and I explained the requirement for the breath test again. I explained to GARZA that I was not going to take his driver's license, which seemed to be his major concern. I ran another test utilizing the Intoxilyzer at 1946 hrs. GARZA provided two breath samples. The first was 0.126 g/210L at 1949 hrs and the second was 0.127 g/210L at 1956 hrs.

During the booking process GARZA cried, talked about how he was going to lose his class-A license, how he was just going to back the trailer in, that he regretted his decision to drive, and that he would never drive drunk again. He said that he would promise to never drive drunk again if we let him go, and that he would give Ranger Bolton and I each $500 if we would let him go without charging him.

Pending Charges:

36 CFR 4.22(b)(3) – driving w/out due care – VN: 6708874

36 CFR 4.23(a)(1) – DUI – VN: 6708875

36 CFR 4.23(a)(2) – driving over 0.08 BrAC – VN: 6709126

The foregoing statement is based upon (check all that apply):

__X__ My personal observations

__X__ My personal investigation

__X__ Information supplied to me from my fellow officer's observations.

_____ Investigation conducted by a fellow officer.

_____ Other (explain above)

**Pursuant to 28 U.S.C. § 1746(2), I declare that the foregoing is true and correct to best of my knowledge.**

Executed on: __07/01/2017__          _____
                Date (mm/dd/yyyy)          Officer's Signature/Badge Number

Probable cause has been stated for the issuance of a warrant.

Executed on: __10/4/2017__          _____
                Date (mm/dd/yyyy)          U.S. Magistrate Judge

4

# United States District Court
## Violation Notice

CVB Location Code: A80

| Violation Number | Officer Name (Print) | Officer No. |
|---|---|---|
| 6708875 | POPORES | 615 |

6708875

### YOU ARE CHARGED WITH THE FOLLOWING VIOLATION

Date and Time of Offense (mm/dd/yyyy): 07/01/2017 1844
Offense Charged: ☒ CFR ☐ USC ☐ State Code
36 CFR 4.23a1

Place of Offense: Katherine Spur Rd by motel

Offense Description: Factual Basis for Charge — DUI
HAZMAT ☐

### DEFENDANT INFORMATION
PI

Last Name: GARZA
First Name: Rene
M.I.: J

Street Address:

City: Bakersfield
State: CA
Zip Code: 93309
Date of Birth (mm/dd/yyyy): /1988

Driver's License No.: 
CDL ☐ D.L. State: CA
Social Security No.:

☒ Adult ☐ Juvenile   Sex: ☒ Male ☐ Female
Hair: Brn   Eyes: Grn   Height: 6-01   Weight: 255

### VEHICLE   VIN:                                      CMV ☐

Tag No.:   State: CA   Year: 11   Make/Model: GMC Sierra   PASS ☐   Color: Silver

☒ A  IF BOX A IS CHECKED, YOU MUST APPEAR IN COURT. SEE INSTRUCTIONS (on back of yellow copy)

☒ B  IF BOX B IS CHECKED, YOU MUST PAY AMOUNT INDICATED BELOW OR APPEAR IN COURT. SEE INSTRUCTIONS (on back of yellow copy).

$ Forfeiture Amount
+ $30 Processing Fee
$ Total Collateral Due

PAY THIS AMOUNT →

### YOUR COURT DATE
(If no court appearance date is shown, you will be notified of your appearance date by mail.)

Court Address: 702 293 8857 Chris Raynolds
Date (mm/dd/yyyy):
Time (hh:mm):

My signature signifies that I have received a copy of this violation notice. It is not an admission of guilt. I promise to appear for the hearing at the time and place instructed or pay the total collateral due.

X Defendant Signature

---

## STATEMENT OF PROBABLE CAUSE
(For issuance of an arrest warrant or summons)

I state that on July 01, 2017 while exercising my duties as a law enforcement officer in the _____ District of Arizona

see attached (4 pages)

The foregoing statement is based upon:
☐ my personal observation   ☒ my personal investigation
☐ information supplied to me from my fellow officer's observation
☐ other (explain above)

I declare under penalty of perjury that the information which I have set forth above and on the face of this violation notice is true and correct to the best of my knowledge.

Executed on: 07/01/2017
Date (mm/dd/yyyy)   Officer's Signature

Probable cause has been stated for the issuance of a warrant.

Executed on: _____
Date (mm/dd/yyyy)   U.S. Magistrate Judge

HAZMAT = Hazardous material involved in incident; PASS = 9 or more passenger vehicle;
CDL = Commercial drivers license;   CMV = Commercial vehicle involved in incident

CVB ScanAUG 09, 2017 0:58

CVB SCAN 08/09/2017

## STATEMENT OF PROBABLE CAUSE

On or about July 1, 2017, at about 6:40 pm, I, Ranger Matthew Popores, was on patrol at Katherine Landing within Lake Mead National Recreation Area in the District of Arizona. The following is a summary of my investigation involving Rene GARZA:

I was patrolling with Ranger S. Barbay in a marked patrol vehicle. We were traveling up Katherine Spur Road from the launch ramp to the motel when I received a radio call about a vehicle obstructing traffic at the launch ramp. I went to turn my patrol vehicle around in the motel entrance when I observed a silver GMC Sierra truck towing a boat trailer in the launch/recovery lane near the restaurant parking lot entrance. There was a male standing in the road apparently talking to the driver of the silver truck. I turned around and observed male in the road holding up his cell phone as if to take a picture of the truck driver. When we pulled up to him he kept walking by us and said that the guy in the truck cut him in line.

We drove down to the launch ramp and were unable to find the traffic obstruction so we cleared the call and started back up Katherine Spur Road. When we drove by the same silver truck I heard someone yell "HEY". I observed that the front license plate and bumper of the silver truck looked dented. I turned our vehicle around in the restaurant parking lot and parked by the stop sign. I got out and started walking toward the truck.

I observed a tall white male with very short hair walking from the front of the silver truck to the passenger side. I observed a white male with long black and grey hair getting into the vehicle in front of the silver truck. That vehicle was a black Chevrolet Suburban towing a black two-PWC trailer. The trailer was empty.

The Suburban started to pull away so I knocked on the passenger window. The operator exited. I asked him what happened. He said that the truck behind him rear-ended his trailer. He did not see who was driving but said that the guy was talking to him about the accident. I turned around and observed that there was a female in the driver's seat of the truck. The male I had seen walking from the front of the truck had walked into the restaurant parking lot. He was by the maintenance shop building/gas pump area. I called over to him to come back. At first he only looked at me, but after I pointed to him and yelled to him again he walked back over.

He came over to my patrol vehicle. I observed that his eyes were very red and glassy. His face was flushed. There was a strong odor of alcoholic beverage coming from him. He seemed nervous and avoided looking at me. I asked him if he was driving the truck. He said that he was not driving any vehicle. I told him that I believed he was driving the silver truck. He said that he was not. I asked him several more times and he eventually admitted to driving the truck, but said he was only going to back up the trailer. He also said that there was no accident. His speech was slurred and he did not seem to want to answer any of my questions. While I was talking to him he continuously looked around

1

CVB SCAN 08/09/2017

instead of looking at me and turning his body from side-to-side anxiously. I had him sit on the sidewalk curb.

After a few seconds, GARZA said that the curb was too hot and stood up. I instructed him to sit on the rear bumper of my patrol vehicle. I identified him by verbal name and DOB as Rene GARZA. During this time he stood up multiple times. I told him to sit back down each time. I asked GARZA how much he had to drink. He said a couple beers. I asked him what kind and he said Corona Light. I asked him how long ago and he said an hour ago. I asked him when he had last eaten. He said at noon. He said he was not on any medications, under the care of a doctor or dentist, he had no physical disabilities or defects, but he did have a cut on the bottom of him left foot. GARZA said he was just going to back the trailer in. He also said that he did not know that there was only one lane for recovering boats and he did not mean to cut in line.

I walked over to the Shell gas pump with GARZA. Ranger Barbay moved the patrol vehicle. Shortly thereafter, Ranger Orfe and Ranger Bolton arrived.

I performed Standardized Field Sobriety Tests on GARZA. Prior to the Horizontal Gaze Nystagmus test I observed equal pupil size, equal tracking and no resting nystagmus. During the test I observed a lack of smooth pursuit in both eyes, a distinct and sustained nystagmus at maximum deviation in both eyes, and the onset of nystagmus prior to 45 degrees in both eyes for a total of six clues of impairment.

After performing the HGN, I asked Ranger Orfe and Ranger Barbay to contact the occupants of the two vehicles involved in the collision. During that conversation, Ranger Barbay told me that she had seen GARZA behind the wheel of the silver truck.

During the instruction phase for the Walk and Turn test, GARZA started before being instructed to do so. During his first attempt on the test he walked forward three steps, stopped for several seconds and then walked backwards three steps. I instructed the test for GARZA again. Instead of demonstrating three steps (as is common practice) I demonstrated all nine steps to ensure GARZA understood the instructions. During his second attempt, GARZA failed to touch his heel to his toe multiple times and performed an improper turn. I observed two clues on each attempt for a total of four clues of impairment.

During the One Leg Stand test I observed GARZA sway side-to-side and raise his arms for a total of two clues of impairment.

I then asked GARZA to perform a portable breath test. He put the straw into his mouth, closed his eyes and puckered his face as if he were blowing into the tube. I told him it was not working; he did the same thing on subsequent attempts. His face turned red while he was "blowing". The PBT did not register that GARZA was blowing into the machine.

2

CVB SCAN 08/09/2017

Based on Ranger Barbay's and GARZA's statements of him operating the silver truck, my observations of the damage from the collision, GARZA's attempt to leave the area, his red and glassy eyes, his slurred speech, his statements about having consumed alcohol and his performance on the field sobriety tests, I placed GARZA under arrest. Ranger Bolton and I placed him into handcuffs.

Ranger Bolton and I transported GARZA to the launch ramp. I stopped to talk to Ranger Orfe and Ranger Barbay. They told me that the female who had taken over driving the silver truck after the collision admitted that GARZA had been driving. The Rangers said there was no noticeable damage to the trailer, but the front license plate on the silver truck was bent.

At the Katherine Booking Office I observed a deprivation period on GARZA from 1913 to 1929 hrs. During that time I explained the penalty for not doing the required breath test. I started the test at 1929 hrs utilizing an Intoxilyzer 8000 (SN:80-000724). GARZA provided one sample but then decided he did not want to provide a second sample. The test sequence was not completed successfully. Ranger Bolton and I explained the requirement for the breath test again. I explained to GARZA that I was not going to take his driver's license, which seemed to be his major concern. I ran another test utilizing the Intoxilyzer at 1946 hrs. GARZA provided two breath samples. The first was 0.126 g/210L at 1949 hrs and the second was 0.127 g/210L at 1956 hrs.

During the booking process GARZA cried, talked about how he was going to lose his class-A license, how he was just going to back the trailer in, that he regretted his decision to drive, and that he would never drive drunk again. He said that he would promise to never drive drunk again if we let him go, and that he would give Ranger Bolton and I each $500 if we would let him go without charging him.

Pending Charges:

36 CFR 4.22(b)(3) – driving w/out due care – VN: 6708874

36 CFR 4.23(a)(1) – DUI – VN: 6708875

36 CFR 4.23(a)(2) – driving over 0.08 BrAC – VN: 6709126

3

6708875
A180

CVB SCAN 08/09/2017

The foregoing statement is based upon (check all that apply):

    __X__ My personal observations

    __X__ My personal investigation

    __X__ Information supplied to me from my fellow officer's observations.

    _____ Investigation conducted by a fellow officer.

    _____ Other (explain above)

**Pursuant to 28 U.S.C. § 1746(2), I declare that the foregoing is true and correct to best of my knowledge.**

Executed on: __07/01/2017__       _____#615_____
                Date (mm/dd/yyyy)               Officer's Signature/Badge Number

Probable cause has been stated for the issuance of a warrant.

Executed on: __10/05/2017__      _____
                Date (mm/dd/yyyy)               U.S. Magistrate Judge

4

6708875
A180

# United States District Court
## Violation Notice

CVB Location Code: **A180**

| Violation Number | Officer Name (Print) | Officer No. |
|---|---|---|
| 6709126 | POPORES | 615 |

6709126

### YOU ARE CHARGED WITH THE FOLLOWING VIOLATION

Date and Time of Offense (mm/dd/yyyy): 07/01/2017 1844
Offense Charged: ☒ CFR ☐ USC ☐ State Code: 36 CFR 4.23 a2

Place of Offense: Katherine Spur Rd by Motel

Offense Description: Factual Basis for Charge — HAZMAT ☐
driving over 0.08 BrAC

### DEFENDANT INFORMATION

Last Name: GARZA
First Name: Rene
M.I.: J

Street Address:
City: Bakersfield
State: CA
Zip Code: 93309
Date of Birth (mm/dd/yyyy): /1988

D.L. State: CA

☒ Adult ☐ Juvenile
Sex: ☒ Male ☐ Female
Hair: Brn
Eyes: Grn
Height: 6-01
Weight: 255

### VEHICLE

Tag No.
State: CA
Year: 11
Make/Model: GMC Sierra
PASS ☐
Color: Silver

**A** ☒ IF BOX A IS CHECKED, YOU MUST APPEAR IN COURT. SEE INSTRUCTIONS (on back of yellow copy).

**B** ☐ IF BOX B IS CHECKED, YOU MUST PAY AMOUNT INDICATED BELOW OR APPEAR IN COURT. SEE INSTRUCTIONS (on back of yellow copy).

$ ~~Forfeiture Amount~~
+ ~~$30 Processing Fee~~
**PAY THIS AMOUNT →** $ ~~Total Collateral Due~~

### YOUR COURT DATE
(If no court appearance date is shown, you will be notified of your appearance date by mail.)

Court Address: 702 293 8857 Chris Raynolds
Date (mm/dd/yyyy):
Time (hh:mm):

My signature signifies that I have received a copy of this violation notice. It is not an admission of guilt. I promise to appear for the hearing at the time and place instructed or pay the total collateral due.

X Defendant Signature

---

## STATEMENT OF PROBABLE CAUSE
(For issuance of an arrest warrant or summons)

I state that on **July 01**, 20**17** while exercising my duties as a law enforcement officer in the _____ District of **Arizona**

see attached (4 pages)

The foregoing statement is based upon:
☐ my personal observation   ☒ my personal investigation
☐ information supplied to me from my fellow officer's observation
☐ other (explain above)

I declare under penalty of perjury that the information which I have set forth above and on the face of this violation notice is true and correct to the best of my knowledge.

Executed on: 07/01/2017   [signature]
Date (mm/dd/yyyy)   Officer's Signature

Probable cause has been stated for the issuance of a warrant.

Executed on: _____
Date (mm/dd/yyyy)   U.S. Magistrate Judge

HAZMAT = Hazardous material involved in incident; PASS = 9 or more passenger vehicle;
CDL = Commercial drivers license; CMV = Commercial vehicle involved in incident

CVB ScanAUG 09, 2017 10:57

## STATEMENT OF PROBABLE CAUSE

On or about July 1, 2017, at about 6:40 pm, I, Ranger Matthew Popores, was on patrol at Katherine Landing within Lake Mead National Recreation Area in the District of Arizona. The following is a summary of my investigation involving Rene GARZA:

I was patrolling with Ranger S. Barbay in a marked patrol vehicle. We were traveling up Katherine Spur Road from the launch ramp to the motel when I received a radio call about a vehicle obstructing traffic at the launch ramp. I went to turn my patrol vehicle around in the motel entrance when I observed a silver GMC Sierra truck towing a boat trailer in the launch/recovery lane near the restaurant parking lot entrance. There was a male standing in the road apparently talking to the driver of the silver truck. I turned around and observed male in the road holding up his cell phone as if to take a picture of the truck driver. When we pulled up to him he kept walking by us and said that the guy in the truck cut him in line.

We drove down to the launch ramp and were unable to find the traffic obstruction so we cleared the call and started back up Katherine Spur Road. When we drove by the same silver truck I heard someone yell "HEY". I observed that the front license plate and bumper of the silver truck looked dented. I turned our vehicle around in the restaurant parking lot and parked by the stop sign. I got out and started walking toward the truck.

I observed a tall white male with very short hair walking from the front of the silver truck to the passenger side. I observed a white male with long black and grey hair getting into the vehicle in front of the silver truck. That vehicle was a black Chevrolet Suburban towing a black two-PWC trailer. The trailer was empty.

The Suburban started to pull away so I knocked on the passenger window. The operator exited. I asked him what happened. He said that the truck behind him rear-ended his trailer. He did not see who was driving but said that the guy was talking to him about the accident. I turned around and observed that there was a female in the driver's seat of the truck. The male I had seen walking from the front of the truck had walked into the restaurant parking lot. He was by the maintenance shop building/gas pump area. I called over to him to come back. At first he only looked at me, but after I pointed to him and yelled to him again he walked back over.

He came over to my patrol vehicle. I observed that his eyes were very red and glassy. His face was flushed. There was a strong odor of alcoholic beverage coming from him. He seemed nervous and avoided looking at me. I asked him if he was driving the truck. He said that he was not driving any vehicle. I told him that I believed he was driving the silver truck. He said that he was not. I asked him several more times and he eventually admitted to driving the truck, but said he was only going to back up the trailer. He also said that there was no accident. His speech was slurred and he did not seem to want to answer any of my questions. While I was talking to him he continuously looked around

1

CVB SCAN 08/09/2017

instead of looking at me and turning his body from side-to-side anxiously. I had him sit on the sidewalk curb.

After a few seconds, GARZA said that the curb was too hot and stood up. I instructed him to sit on the rear bumper of my patrol vehicle. I identified him by verbal name and DOB as Rene GARZA. During this time he stood up multiple times. I told him to sit back down each time. I asked GARZA how much he had to drink. He said a couple beers. I asked him what kind and he said Corona Light. I asked him how long ago and he said an hour ago. I asked him when he had last eaten. He said at noon. He said he was not on any medications, under the care of a doctor or dentist, he had no physical disabilities or defects, but he did have a cut on the bottom of him left foot. GARZA said he was just going to back the trailer in. He also said that he did not know that there was only one lane for recovering boats and he did not mean to cut in line.

I walked over to the Shell gas pump with GARZA. Ranger Barbay moved the patrol vehicle. Shortly thereafter, Ranger Orfe and Ranger Bolton arrived.

I performed Standardized Field Sobriety Tests on GARZA. Prior to the Horizontal Gaze Nystagmus test I observed equal pupil size, equal tracking and no resting nystagmus. During the test I observed a lack of smooth pursuit in both eyes, a distinct and sustained nystagmus at maximum deviation in both eyes, and the onset of nystagmus prior to 45 degrees in both eyes for a total of six clues of impairment.

After performing the HGN, I asked Ranger Orfe and Ranger Barbay to contact the occupants of the two vehicles involved in the collision. During that conversation, Ranger Barbay told me that she had seen GARZA behind the wheel of the silver truck.

During the instruction phase for the Walk and Turn test, GARZA started before being instructed to do so. During his first attempt on the test he walked forward three steps, stopped for several seconds and then walked backwards three steps. I instructed the test for GARZA again. Instead of demonstrating three steps (as is common practice) I demonstrated all nine steps to ensure GARZA understood the instructions. During his second attempt, GARZA failed to touch his heel to his toe multiple times and performed an improper turn. I observed two clues on each attempt for a total of four clues of impairment.

During the One Leg Stand test I observed GARZA sway side-to-side and raise his arms for a total of two clues of impairment.

I then asked GARZA to perform a portable breath test. He put the straw into his mouth, closed his eyes and puckered his face as if he were blowing into the tube. I told him it was not working; he did the same thing on subsequent attempts. His face turned red while he was "blowing". The PBT did not register that GARZA was blowing into the machine.

2

6709126
A180

CVB SCAN 08/09/2017

Based on Ranger Barbay's and GARZA's statements of him operating the silver truck, my observations of the damage from the collision, GARZA's attempt to leave the area, his red and glassy eyes, his slurred speech, his statements about having consumed alcohol and his performance on the field sobriety tests, I placed GARZA under arrest. Ranger Bolton and I placed him into handcuffs.

Ranger Bolton and I transported GARZA to the launch ramp. I stopped to talk to Ranger Orfe and Ranger Barbay. They told me that the female who had taken over driving the silver truck after the collision admitted that GARZA had been driving. The Rangers said there was no noticeable damage to the trailer, but the front license plate on the silver truck was bent.

At the Katherine Booking Office I observed a deprivation period on GARZA from 1913 to 1929 hrs. During that time I explained the penalty for not doing the required breath test. I started the test at 1929 hrs utilizing an Intoxilyzer 8000 (SN:80-000724). GARZA provided one sample but then decided he did not want to provide a second sample. The test sequence was not completed successfully. Ranger Bolton and I explained the requirement for the breath test again. I explained to GARZA that I was not going to take his driver's license, which seemed to be his major concern. I ran another test utilizing the Intoxilyzer at 1946 hrs. GARZA provided two breath samples. The first was 0.126 g/210L at 1949 hrs and the second was 0.127 g/210L at 1956 hrs.

During the booking process GARZA cried, talked about how he was going to lose his class-A license, how he was just going to back the trailer in, that he regretted his decision to drive, and that he would never drive drunk again. He said that he would promise to never drive drunk again if we let him go, and that he would give Ranger Bolton and I each $500 if we would let him go without charging him.

Pending Charges:

36 CFR 4.22(b)(3) – driving w/out due care – VN: 6708874

36 CFR 4.23(a)(1) – DUI – VN: 6708875

36 CFR 4.23(a)(2) – driving over 0.08 BrAC – VN: 6709126

3

6709126
A180

The foregoing statement is based upon (check all that apply):

   __x__ My personal observations

   __x__ My personal investigation

   __x__ Information supplied to me from my fellow officer's observations.

   _____ Investigation conducted by a fellow officer.

   _____ Other (explain above)

**Pursuant to 28 U.S.C. § 1746(2), I declare that the foregoing is true and correct to best of my knowledge.**

Executed on: __07/01/2017__     _[signature]_ #615
             Date (mm/dd/yyyy)         Officer's Signature/Badge Number

Probable cause has been stated for the issuance of a warrant.

Executed on: __10/05/2017__     _[signature]_
             Date (mm/dd/yyyy)         U.S. Magistrate Judge

4